*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

## MEMORANDUM OPINION

No. 04-08-00320-CR

Rudy **VARELA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-07-1245
Honorable Frank Follis, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed:    November 5, 2008

AFFIRMED

Rudy Varela appeals his misdemeanor conviction for possession of marijuana, contending

the trial court erred in denying his motion to suppress evidence. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In February 2007, a search warrant was issued in Guadalupe County authorizing the search

of premises described as the following:

> Just outside the City of New Braunfels, 1052 Krause Lane #29. Said suspected place
> is a single wide mobile home with light blue colored vinyl siding. The skirting
> around the mobile home is what appears to be a type of fiberglass material that is

whitish in color. There is a door on the southeast side of the mobile home, which is apparently the front door. On the northeast side of the mobile home is a bay window that protrudes from the mobile home.

The warrant, which authorized the search for evidence of methamphetamine manufacturing and trafficking, was issued based on the affidavit of Detective Stephen Hanna of the New Braunfels Police Department. Detective Hanna's affidavit not only described the premises in detail as set forth in the warrant, but it also identified Rudy Varela as the "suspected party" in charge of the premises. In addition to describing the premises and identifying Varela, the affidavit also referred to attachments consisting of "a map/aerial photograph illustrating the relative location of the place to be searched" and "a photograph of the actual residence to be searched." Detective Hanna identified the address as 1052 Krause Lane #29 in the search warrant affidavit because Varela's driver's license, which Detective Hanna obtained through the Department of Public Safety, identified Varela's residence as 1052 Krause Lane #29. In his affidavit, Detective Hanna describes the facts and circumstances giving rise to probable cause for the search. Those facts and circumstances consisted of several illegal drug sales by Varela to a confidential informant at the premises described in the affidavit.

At the suppression hearing, Detective Hanna confirmed that he obtained and executed the search warrant in question. When he went to the premises to execute the warrant, there were no numbers on the trailer. He knocked on the door, and when no one answered, he entered the residence. Varela drove up as Detective Hanna and other officers were executing the search warrant. Detective Hanna told Varela they were trying to execute a search warrant and asked Varela to tell him the address of the premises they were currently searching. Varela responded it was 1052 Krause Lane #29. Detective Hanna asked Varela if he was sure about that, to which Varela responded

"[e]ither 29 or 22." Varela produced a driver's license that listed his address as 1052 Krause Lane #29. Before Varela arrived, Detective Hanna had located a utility bill in the residence that was addressed to 1052 Krause Lane #22. When asked why he continued to search even though he had found the utility bill in the residence that may have indicated he was in the wrong place, Detective Hanna responded, "I wasn't in the wrong place." Upon searching the residence, Detective Hanna found about three ounces of marijuana. When Varela indicated the marijuana belonged to him, he was arrested.

Detective Hanna testified that the only trailer he saw with a number on it was located to the left of Varela's trailer, and it had the number 23 on it. He described the trailers on the lot as "kind of scattered," noting that not every lot had a trailer on it. When Detective Hanna presented his affidavit to the magistrate, attached to his affidavit were the originals of both the aerial photograph of the trailer park and the photograph of the trailer itself. Both photographs depict the trailer house that Detective Hanna searched.

After hearing Detective Hanna's testimony and counsels' arguments, the trial court denied the motion to suppress. Varela then pled guilty; however, he reserved his right to appeal the trial court's ruling on his motion to suppress.

On appeal, Varela argues the trial court should have granted his motion to suppress because the officers exceeded the scope of the search warrant in that they executed the warrant at a residence not named in the warrant. According to Varela, once the officers found evidence of an address contradicting the address contained in the search warrant, any continued search of the residence exceeded the scope of the warrant.

## DID THE SEARCH EXCEED THE SCOPE OF THE WARRANT?

Generally, we review a trial court's denial of a motion to suppress for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Thus, we afford almost total deference to a trial court's determination of historical facts that the record supports, especially when the findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, we review *de novo* a trial court's determination of mixed questions of law and fact that do not turn on an evaluation of credibility. *Id.* And, when reviewing application of law to facts, we review the evidence in the light most favorable to the trial court's ruling. *Id.*

The constitutional objectives of requiring a "particular" description of the place to be searched include the following: (1) ensuring that the officer searches the right place; (2) confirming that probable cause is, in fact, established for the place described in the warrant; (3) limiting the officer's discretion and narrowing the scope of his search; (4) informing the owner of the officer's authority to search that specific location; and (5) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner. *Long v. State*, 132 S.W.3d 443, 447 (Tex. Crim. App. 2004). The goal of preventing this last objective, the mistaken execution of the warrant against an innocent third party, is met when the warrant identifies the place to be searched sufficiently so that the officers who execute the warrant, acting reasonably, can locate that place and identify it from other places in the community. *Bridges v. State*, 574 S.W.2d 560, 562 (Tex. Crim. App. [Panel Op.] 1978). "We are convinced that the rights of society and of the innocent third party can best be protected by evaluating each search warrant individually." *Id.* Thus, a search is not

rendered illegal for exceeding the scope of a search warrant so long as the officers executing the warrant reasonably believed at the time that the place searched was covered by the warrant. *Maryland v. Garrison*, 480 U.S. 79, 86-88 (1987); *Amir v. State*, 45 S.W.3d 88, 94 (Tex. Crim. App. 2001) (Keller, J., concurring).

Varela notes that many cases considering the issue of whether law enforcement exceeded the scope of a search warrant involve situations where officers extended their search to an area adjacent to or adjoining the area named in the search warrant. *See, e.g., Amir*, 45 S.W.3d at 90-91 (holding police did not exceed scope of warrant where warrant listed 5627 Star Lane, Suite A, but officers searched appellant's residence he had "carved out" within the 5627 address but placed the numbers 5625 on the door); *Cannady v. State*, 582 S.W.2d 467, 469 (Tex. Crim. App. [Panel Op.] 1979) (holding search did not exceed scope of warrant where warrant listed 6927 Long Point Road but contraband was seized at 6929 Long Point Road because the two addresses were adjacent offices within a single building and the partitions between the two had been removed for remodeling).

Varela urges, however, that this case is distinguishable from those cases because this case does not involve a search of adjoining or adjacent areas to the area listed in the warrant. Instead, Varela argues that "[t]here was only [one] residence searched, and the police could not have reasonably believed that it was the residence located at the address listed in the warrant." According to Varela, once the officers found the utility bill addressed to Lot #22, their search should have ceased.

The State, on the other hand, contends the trial court did not abuse its discretion in denying the motion to suppress because the officers reasonably and in good faith believed they were

searching the right residence as identified in the affidavit and search warrant. We agree with the State.

There is no dispute that Detective Hanna's affidavit identified the trailer that was, in fact, the subject of the search. Further, it is not disputed that Varela claimed that trailer as his residence and that officers had witnessed Varela conducting drug sales from that trailer. Moreover, Detective Hanna went so far as to identify the trailer to be searched by attaching both aerial and close-up photographs of the trailer that was searched. It is further undisputed that Varela listed his residence address on his driver's license as 1052 Krause Lane #29. And, as a result, Detective Hanna used that address in his affidavit to obtain the search warrant. When Varela drove up to the residence during the search, Varela initially confirmed that the address was 1052 Krause Lane #29. Upon further questioning he indicated it was either #29 or #22. The only other indication that the address might be #22 was the utility bill located inside the trailer. When asked during the suppression hearing about continuing to search even though he had an indication he was in the wrong place, Detective Hanna answered, "I wasn't in the wrong place."

Although there may have been some confusion about whether the trailer was located on Lot #29 or #22, there is nothing in the record to indicate the officers were unreasonable in believing they were searching the residence listed in the search warrant. Using the applicable standard of review, we hold that the trial court, as sole trier of fact and judge of the credibility of Detective Hanna, did not abuse its discretion in finding the officers could have reasonably believed they were searching the premises covered by the warrant.

We, therefore, affirm the trial court's judgment.


Karen Angelini, Justice

DO NOT PUBLISH